UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ANTONIETA HARDY,                              :

           Plaintiff,                  :        <u>OPINION AND ORDER</u>

      -against-                         :        19 Civ. 915 (GWG)

COMMISSIONER OF SOCIAL SECURITY,
                               :
           Defendant.
-------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Plaintiff Antonieta Hardy brings this action pursuant to 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security (the "Commissioner")

denying her claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("the

Act").  Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c).[1]  For the reasons stated below, Hardy's motion is granted and the

Commissioner's motion is denied.

I. <u>BACKGROUND</u>

    A. <u>Procedural History</u>

      Hardy applied for DIB on January 6, 2015.  <u>See</u> SSA Administrative Record, filed May

22, 2019 (Docket # 11) ("R.") at 59.  She originally alleged that her disability began on January

21, 2013, R. 198, though she later amended her onset date to July 1, 2015, R. 31-32, when she

---

    [1] <u>See</u> Motion for Judgment on the Pleadings, filed July 24, 2019 (Docket # 15);
Memorandum of Law in Support of Motion for Judgment on the Pleadings, filed July 24, 2019
(Docket # 16) ("Pl. Mem."); Motion for Judgment on the Pleadings, filed Oct. 23, 2019 (Docket
# 19); Memorandum of Law in Support of Motion for Judgment on the Pleadings, filed Oct. 23,
2019 (Docket # 20) ("Def. Mem."); Reply to Response Motion, filed Nov. 14, 2019 (Docket
# 21) ("Reply"); Letter dated November 22, 2019, filed Nov. 22, 2019 (Docket # 22).

was 64 years old, <u>see</u> R. 16, 34.

The Social Security Administration ("SSA") denied the application on May 15, 2015, R. 69, and Hardy sought review by an Administrative Law Judge ("ALJ"), R. 81. A hearing was held on August 9, 2017. R. 26, 28. In a written decision dated January 18, 2018, the ALJ found Hardy was not disabled within the meaning of the Act. R. 13-21. On December 4, 2018, the Appeals Council denied Hardy's request for review of the ALJ's decision. R. 1-7. This action followed.

B. <u>The Hearing Before the ALJ</u>

The hearing was held before ALJ Brian Lemoine in White Plains, New York. R. 26, 28. Hardy, and her attorney William Morrison, appeared by video from a hearing office in Poughkeepsie, New York. R. 26, 28-29.

Hardy testified that she had been living in Poughkeepsie, NY, and that she was born on April 26, 1951. R. 28, 34-35. After the amended onset date of July 1, 2015, she did not work and began receiving Social Security retirement benefits in May 2017. R. 35.

From 2004 to 2015, Hardy worked for the Gap as a merchandise handler at a warehouse facility. R. 35-36. In this position she was on her feet eight to ten hours a day, filling boxes with merchandise, and was expected to lift up to 40 pounds. R. 36. Prior to being hired by the Gap, Hardy had been placed in the same merchandise-handler position for the Gap through a temporary agency, DAW Holdings. R. 37. Also in 2004, Hardy had been placed in a data entry job by the temporary agency Here's Help Staffing for six months. R. 37-38. In that placement, Hardy worked in a medical laboratory inputting information for clients, which amounted to "basically typing eight hours a day." R. 38. For six years ending in 2003, Hardy worked as a teller for Regina Check Cashing where she cashed checks and processed money orders. R. 39.

Hardy had an accident that caused her to stop working for the Gap in January 2013. R. 46. Hardy fell on her knees and had problems with her back. R. 46. She was placed on light duty at the Gap until she could no longer walk. R. 46-47. Eventually, Hardy had two arthroscopic surgeries on her right knee and received injections in her back. R. 47. She still receives therapy for her back in addition to injections in her knees every six months. R. 47. She also receives cortisone injections for pain. R. 47. Hardy's knee surgeries were in April 2013 and June 2015. R. 47. After the most recent surgery Hardy was feeling better, but the pain returned. R. 48.

Hardy described her knee pain as occurring "all the time." R. 48. She said "if I sit down for so long I have pain when I stand up and I have pain in my back and if I walk I walk 20 minutes and I have to stop. Going up and down the steps I go one step at a time because I can no [sic] do a normal like everybody else." R. 48. When asked about her pain when sitting, Hardy said that the pain varies but it occurs after a half hour, at which point she stands up and walks a little before sitting back down. R. 52-53. Hardy uses back and knee braces and something in her car to keep her back straight so she can drive. R. 53.

Hardy testified next about how her pain influences her daily activities. She does laundry with someone else in the house, her husband helps her vacuum, and she can clean but sits sometimes. R. 53. During the day, while her husband is at work, Hardy reads, watches TV, crafts, and in the summer, goes outside to garden but "not too much because I cannot bend and then I try not to do anything like that when I'm by myself." R. 54. Hardy testified that she could drive to do local errands and that she could drive to visit her daughter and grandchildren who live 45 minutes away. R. 55-56. Hardy tries to visit them every other week, but she does not regularly babysit. R. 56.

Hardy is prescribed Naproxen, which she takes twice a day when she cannot handle the pain, which is about every other day. R. 54-55. Otherwise, she takes Advil or Tylenol. R. 54. Hardy's physician has told her she might need to replace her right knee, but there was no timeline for that so long as she can handle the injections. R. 55.

The ALJ consulted a vocational expert ("VE"), Esperanza Distefano, by phone, R. 29, who, after some clarifying questions, R. 40-42, identified Hardy's past work as a warehouse worker, a data entry clerk, and a cashier, R. 43-44. The ALJ asked the VE if a person who was "limited to a range of sedentary exertional work with no more than occasional postural positions which would include crouching, crawling, stooping, kneeling, balancing and also climbing of stairs," could perform Hardy's past "sedentary" positions of data entry and cashier. R. 44. The VE responded that such a person could perform the jobs of data entry and cashier check cashing. R. 44.

During the hearing, the ALJ noted that the last independent medical examination occurred in January 2015, which was before Hardy's last surgery. R. 49-50. The ALJ said "whether I'm going to pay this case or not really depends on how well she recovered from the June 2015 surgery and I don't really have that much evidence after that surgery." R. 50. Morrison attested that the medical record was complete, noting that the most recent MRI from July 19, 2017, was in the file, and that there was no specific functional assessments or medical source statements that followed the June 2015 surgery. R. 51. The ALJ said "at this point she's 66 years old and she's receiving retirement benefits so the only way I can really get a handle on what happened after the last knee arthroscopies is to get a current assessment. . . . So I think I'm going to do that post-hearing." R. 51-52. At the conclusion of the hearing the ALJ added "I'm not sure whether Ms. Hardy is capable of doing sedentary exertion or just not capable of holding

a full time job. I just want to get a CE opinion to help me make up my mind about that." R. 57.

C. <u>The Medical Evidence</u>

Both Hardy and the Commissioner have provided detailed summaries of the medical evidence. <u>See</u> Pl. Mem. at 2-10; Def. Mem. at 2-5. The Court directed the parties to specify any objections they had to the opposing party's summary of the record, <u>see</u> Scheduling Order, filed May 29, 2019 (Docket # 12) ¶ 5, and neither party has done so. Accordingly, the Court adopts the parties' summaries of the medical evidence as accurate and complete for purpose of the issues raised in this suit. We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

D. <u>The ALJ's Decision</u>

The ALJ denied Hardy's application for DIB on January 18, 2018. R. 10. Following the five-step test set forth in SSA regulations, the ALJ found that Hardy met the insured status requirements and had not engaged in "substantial gainful activity during the period from her alleged onset date of July 1, 2015 through her date last insured of March 31, 2017." R. 15. At step two, the ALJ found that Hardy had the following severe impairments: "diffuse degenerative disc disease, osteoarthritis of the back and bilateral knees, status post arthrosporic surgeries, hypertension and a history of a thyroid disorder." R. 15.

At step three, the ALJ concluded that none of Hardy's severe impairments singly or in combination met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15. The ALJ specifically considered sections in listing 1.00, but concluded "the medical evidence does not establish the specific requirements of these listings." R. 16.

Before moving to step four, the ALJ assessed Hardy's residual functional capacity ("RFC"). R. 16-20. The ALJ determined that Hardy retained the ability to perform sedentary

work, as defined in 20 C.F.R. 404.1567(a), "except no more than occasional postural positions such as crouching, crawling, stooping, kneeling, balancing and climbing stairs." R. 16.

In making this determination, the ALJ followed the two-step process where he first "determined whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms" and then evaluated "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations." R. 16.

The ALJ considered Hardy's description of her impairments, but found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence" and described the elements of the record and of Hardy's testimony and demeanor that caused him to reach this conclusion. R. 17-18. He also evaluated the opinion evidence in the record. R. 18-19. This examination included an evaluation of the opinion of consultative examiner, Dr. Kumar, who examined Hardy after the hearing and who concluded that Hardy had "moderate limitations walking, kneeling, bending, and squatting" and "was able to sit, stand and walk up to four hours each in a normal workday." R. 19, 737, 739. Dr. Kumar also found that Hardy could not "perform postural actions and had occasional limitations with handling, fingering, reaching and pushing/pulling." R. 19, 740. While the ALJ found Dr. Kumar's opinion to be "generally consistent with the objective findings in the treatment records," he did not find the "portion of the opinion regarding postural and manipulative limitations" to be supported by the record. R. 19.

At step four, the ALJ concluded that Hardy was "capable of performing past relevant work as a data entry clerk, cashier at a check cashing business." R. 20. The ALJ found that

Hardy could perform the positions as they are actually and generally performed.  R. 20.  The

ALJ noted that the VE testified that "an individual with the claimant's residual functional

capacity could perform the duties of a data entry clerk and cashier for a check cashing business

as these jobs are generally performed in the national economy . . . and as the claimant had

performed them."  R. 20.  Accordingly, the ALJ determined that Hardy was not disabled under

the Act.  R. 21.

## II.  GOVERNING STANDARDS OF LAW

### A.  Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining

whether the [Commissioner's] conclusions were supported by substantial evidence in the record

and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013)

(per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d

370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive . . . .").  "Even where the administrative record may also adequately support contrary

findings on particular issues, the ALJ's factual findings must be given conclusive effect so long

as they are supported by substantial evidence."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010)

(per curiam) (citation and internal quotation marks omitted).  Thus, "[i]f the reviewing court

finds substantial evidence to support the Commissioner's final decision, that decision must be

upheld, even if substantial evidence supporting the claimant's position also exists."  Johnson v.

Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126

(2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a

claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal

quotation marks omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir.

2012). Rather, substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402

U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938));

accord Greek, 802 F.3d at 374-75; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It

means — and means only — such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation

and internal quotation marks omitted). The "threshold for such evidentiary sufficiency is not

high." Id. The Second Circuit has held that "[t]he substantial evidence standard means once an

ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to

conclude otherwise." Brault v. Soc. Sec. Admin. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per

curiam) (emphasis in original) (citations and internal quotation marks omitted). "The role of the

reviewing court is therefore quite limited and substantial deference is to be afforded the

Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citations and internal quotation

marks omitted).

B. Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id.

§ 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

8

gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his or her age, education, or work experience. See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the

claimant is able to do such work, he or she is not disabled.  Id. §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv).  Finally, if the claimant is unable to perform past relevant work, the

Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and

work experience, permits the claimant to do other work.  Id. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant cannot perform other work, he or she will be deemed disabled.

Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The claimant bears the burden of proof on all steps

except the final one — that is, proving that there is other work the claimant can perform.  See

Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III.  DISCUSSION

Hardy argues that the ALJ was improperly appointed, Pl. Mem. at 1, 21-25, and that the

decision must be reversed for this reason alone.  We addressed the identical argument in Bonilla-

Bukhari v. Berryhill, 357 F. Supp. 3d 341 (S.D.N.Y. 2019).  For the same reasons stated therein,

we reject Hardy's argument.  See id. at 349-52.

As to the merits, Hardy raises two grounds for reversing the ALJ's decision: (1) the RFC

is not supported by substantial evidence because the ALJ did not give "adequate weight to Dr.

Kumar, rejected portions of it without good cause, and failed to accommodate the limitations

found credible into the RFC determination," Pl. Mem. at 1, 11-17; and (2) the ALJ's evaluation

of Hardy's "subjective symptoms is unsupported by substantial evidence," id. at 1, 17-21.  We

begin by addressing the weight given to Dr. Kumar's opinion because this issue by itself requires

remand.

A claimant's RFC is "the most [a claimant] can still do despite [their] limitations."  20

C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC "is a function-by-function assessment based

upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR

96-8P, 1996 WL 374184, at *3 (S.S.A. July 2, 1996).  The SSA has stated that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . .  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  Id.; accord Ferraris v. Heckler, 728 F.2d 582, 585 (2d Cir. 1984) ("[I]n making any determination as to a claimant's disability, the Secretary must explain what physical functions the claimant is capable of performing.").  Nonetheless, the Second Circuit has held that

> [w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, . . . remand is not necessary merely because an explicit function-by-function analysis was not performed.

Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam); accord Cruz v. Astrue, 941 F. Supp. 2d 483, 498 (S.D.N.Y. 2013).

Prior to Hardy's hearing, no doctor had provided a functional assessment of her abilities. The ALJ specifically adverted to this fact during the hearing.  See R. 51 (questioning whether there are "any specific functional assessments or medical source statements that came after the June 2015 surgery").  He noted his need for a new "assessment" and that he would have to send Hardy "out for an examination."  R. 52.  After hearing additional testimony, he stated that he would keep the record open to obtain an "orthopedic consultative examination."  R. 57.  He concluded,

> [f]rankly, I'm not sure whether Ms. Hardy is capable of doing sedentary exertion or just not capable of holding a full time job.  I just want to get a CE opinion to help me make up my mind about that.

R. 57.

It was against this backdrop that Dr. Kumar was asked to examine Hardy and to complete an evaluation of Hardy in which she opined regarding Hardy's functional abilities. Her opinion included a "Medical Source Statement Of Ability To Do Work-Related Activities." R. 738-43. Dr. Kumar checked the boxes indicating that Hardy was limited to sitting a total of four hours in a workday. R. 739. She also indicated that Hardy could "never" engage in "postural activities" such as climbing stairs, stopping or kneeling, R. 741, and that Hardy could only "occasionally" use her hands for reaching, fingering, pushing, and pulling, R. 740.

To explain the significance of this opinion, we note that "sedentary work" is defined as a job that "involves sitting," although it is recognized that "a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). The regulation states that "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Id. A social security ruling makes clear that the "sitting" required for sedentary work "would generally total about 6 hours of an 8-hour workday." Social Security Ruling SSR 96-9p, 61 FR 34478-01. Thus, case law recognizes that sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citations omitted).

Here, the ALJ recognized that Dr. Kumar provided an opinion in which she limited Hardy to being able to sit at most for four hours in the workday. See R. 19, 739. The ALJ specifically rejected the findings by Dr. Kumar that Hardy had limitations on postural actions and in the use of her hands.[2] The ALJ did not, however, mention — let alone reject — Dr.

_____

[2] Specifically, the ALJ stated as follows:

The opinion of the consultative examiner, Dr. Kumar, was given partial weight (Exhibit 6F). Dr. Kumar opined that the claimant has moderate limitations walking, kneeling, bending, and squatting. Dr. Kumar found that the claimant

Kumar's opinion that Hardy could sit for only four hours in the workday. In other words, the record reflects that the ALJ accepted that Hardy was limited to sitting for four hours in a workday.

The problem here is that the ALJ also explicitly found that Hardy had the RFC for "sedentary work," see R. 16 (finding 5), but never explained why Hardy would be able to perform sedentary work given that sedentary work in fact requires the ability to sit for six hours in the workday, see, e.g., Social Security Ruling SSR 96-9p, 61 FR 34478-01. The ALJ found that Hardy could perform her past relevant work but specifically identified those jobs as involving "sedentary exertion." R. 20.

The Commissioner gives cogent arguments as to why the ALJ was not bound to accept the four-hour limitation in Dr. Kumar's report, including by arguing, for example, the fact that Dr. Kumar does not identify any "particular medical or clinical findings" supporting her assessment as required by the form she filled out, R. 738, or that the assessment was inconsistent with treatment records. See Def. Mem. at 9-11. Whatever may be the merits of these arguments, the ALJ here never in fact rejected the four-hour limitation. See R. 19. To the contrary, he implicitly accepted it. Having accepted it, his conclusion that Hardy could do "sedentary" work remains unexplained. In the end, the Commissioner is reduced to arguing that the four-hour limitation is "nearly consistent" with the requirements of sedentary work. Def.

---

was able to sit, stand and walk up to four hours each in a normal workday. Dr. Kumar further found that the claimant could never perform postural actions and had occasional limitations with handling, fingering, reaching and pushing/pulling. The opinion is generally consistent with the objective findings in the treatment records and with the residual functional found herein, but that portion of the opinion regarding postural and manipulative limitations are unsupported both by the findings on consultative examination and with the treating records.

R. 19.

Mem. at 8-9. The difference between four hours and six hours, however, is significant. Thus, a finding that claimant is limited in her ability to sit for a maximum of four hours is not "consistent" in any fashion with a requirement the claimant sit for six or more hours.

While the Commissioner is correct that the ALJ was not required to rely on a medical opinion that supports the RFC, see Def. Mem. at 13, the Commissioner's own rulings require that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184, at *7; accord Morgan v. Berryhill, 2019 WL 4871502, at *3 (W.D.N.Y. Oct. 3, 2019); Dioguardi v. Comm'r of Soc. Sec., 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006). Here, the portion of Dr. Kumar's opinion left undisturbed by the ALJ directly conflicts with the ALJ's RFC determination. The ALJ made no effort to explain the discrepancy. Accordingly, the case must be remanded to address this error.

Hardy makes a number of other arguments that we do not find persuasive. For example, she takes issue with the "great weight" afforded to Dr. Miller's 2014 examination because, Hardy claims, the "ALJ never explained how Dr. Miller's opinion that Plaintiff could lift up to 50 pounds with ambulation 'as tolerated' and allowances to sit supported the RFC." Pl. Mem. at 12 (citation omitted). Therefore, she argues "[n]o function-by-function analysis supports the RFC determination, and it is unsupported by substantial evidence." Id. However, an express "function-by-function" assessment of a claimant's RFC is not required, so long as the ALJ "explain[s] how the evidence supports his or her conclusions about the claimant's limitations and . . . discuss[es] the claimant's ability to perform sustained work activities." Casino-Ortiz v. Astrue, 2007 WL 2745704, at *13 (S.D.N.Y. Sept. 21, 2007) (citation and internal quotation marks omitted).

As to the other arguments challenging the evaluation of her subjective symptoms, Pl.

Mem. at 17-21, while we find these arguments to be largely unpersuasive on the current record,

we do not believe it necessary to address them here inasmuch as they may be affected by any

new findings or analysis following remand.

IV. CONCLUSION

For the foregoing reasons, Hardy's motion for judgment on the pleadings (Docket # 15)

is granted, and the Commissioner's motion for judgment on the pleadings (Docket # 19) is

denied. The case is remanded to the Commissioner for further proceedings consistent with this

Opinion and Order. The Clerk is requested to enter judgment.

SO ORDERED.

Dated: New York, New York
       January 23, 2020

GABRIEL W. GORENSTEIN
United States Magistrate Judge

15